[No. 794.    August 28, 1899.]

## THE BOARD OF EDUCATION OF THE TOWN OF EDDY, TERRITORY OF NEW MEXICO, Appellant, v. SAMUEL T. BITTING, Appellee.

### SYLLABUS BY THE COURT.

BOARD OF EDUCATION—ISSUANCE OF WARRANTS—STATUTORY INHIBITION— POWER TO INCUR INDEBTEDNESS FOR SCHOOL PURPOSES—MUNICIPAL CORPORATION.—1.    Prior to March 12, 1897, there was no statutory inhibition upon the board of education of a town of New Mexico from issuing warrants evidencing indebtedness up to the four per centum federal limitation, although there was not at the time of their issuance funds in the hands of the treasurer with which to pay the same.

2.   Said board of education may independently of any political or other municipal corporation or other subdivision of the territory, and regardless of the fact that the corporation known as the town of Eddy is situate wholly within the same territorial limits, lawfully incur an indebtedness for school purposes not to exceed four per centum of the value of the taxable property within its limits, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness.

3.   The board of education of the town of Eddy is a distinct municipal corporation, for school purposes, and is one of the corporations enumerated in the act of congress of July 30, 1886, known as the federal limitation act.

*Appeal*, from a judgment for plaintiff; from the Fifth Judicial District Court, Eddy County. Modified and affirmed.

The facts are stated in the opinion of the court.

U S. BATEMAN for appellant.

Even if the warrants within themselves were sufficient to sustain a cause of action, which appellant disputes and asks

the court to pass on, they were issued in violation of law, for it is admitted, by the pleadings that defendant had no money anywhere with which to pay the same, and defendant could not contract such indebtedness. Acts 1889, 196, sec. 4; Acts 1891, 53, sec. 22.

The legislature can not take a part of a county in this territory, and create out of that part numerous corporations, and give to each authority to afterwards respectively become indebted in an amount equal to four per cent of the taxable property within that part of the county. Supp., U. S., Stat. 504, sec. 4; City of Guthrie v. New Vienna Bank,, 38 Pac. Rep. 4.

A. A. FREEMAN and J. O. CAMERON for appellee.

The warrants are in all essential points as required by the statutes. Comp. Laws, sec. 1571.

The constitution of Illinois prohibits the state from subscribing to railroads; yet it was held that the state might authorize counties to do so. Pettiman v. Supervisors, 19 Ill. 411; Cass v. Dillon, 2 Ohio St. 607; 1 Dill. on Munic. Corp. 138; Clark v. Jamesville, 10 Wis. 134.

Appellant is one of the political subdivisions of the territory to which the act of congress specially delegates the power to create an indebtedness of four per cent of the assessed value of the property situated within its limits. Comp. Laws, N. M., secs. 1564, 1577, 1583.

CRUMPACKER, J.—This is a suit instituted by Samuel T. Bitting in the district court of the Fifth judicial district, within and for the county of Eddy, against the board of education of the town of Eddy, of the terrritory of New Mexico, based upon two warrants bearing date February 5, 1895, and July 9, 1895, for the amounts of eighty and thirty-seven and fifty-one one-hundredths dollars respectively, drawn by the president and countersigned by the clerk of said board upon the treasurer of the Eddy school board.

The declaration, alleging the issuance of the warrants in payment of an indebtedness of teachers' salaries, their assignment by indorsement to the plaintiff, plaintiff's demand and defendant's refusal to pay and the damage sustained, was denied by defendant in its answer of two paragraphs, as follows:

"First: That at the time each of the two said warrants were issued, there was no money in the treasury or in any other place, with which to pay the said warrants, and therefore defendant had no authority to issue them.

"Second: That at the time each of the said warrants were issued, the board of education of the town of Eddy of the territory of New Mexico, the defendant herein, was indebted as such corporation, and the property of such corporation was burdened in other debts besides those mentioned by the plaintiff, in the sum of between $18,000 and $19,000, there being of said amount $12,500 bonded debts and the rest being such as plaintiff has sued on, and the same was due and unpaid from the first day of January, 1895, to the fifteenth day of July, same year.

"The defendant further says that the assessed valuation of the taxable property of this defendant for the year 1894, amounted to the sum of $703,689 according to the last assessment for territorial and county taxes for the year 1894, which was the last assessment of that kind made before the time when the said warrants were issued by the defendant.

"Further, that there is another corporation existing in the county of Eddy, territory of New Mexico, which is a subdivision of the said county with permanent and fixed boundaries and is wholly within the limits of this defendant, known as the town of Eddy; that the said town of Eddy from the first day of January to the fifteenth day of July, 1895, was indebted during said time in the sum of $1,200, so this defendant is advised and upon such authority states the facts to be that the total valuation of the taxable property situate in the said, the town of Eddy in the last assessments for ter-

ritorial and county purposes on taxes previous to the year 1895, was $517,281.

"This defendant further says that the said county of Eddy itself on the first day of January, 1895, from thence to and including the fifteenth day of July, same year, and at the time each of the said warrants were issued was indebted in the aggregate in the sum of not less than sixty-five thousand dollars; $30,000 of said indebtedness being bonds, called court-house bonds, issued in the year 1891, about $20,000 being other bonded indebtedness, and the rest being debts on open accounts.

"This defendant further says that the total valuation of the taxable property of the entire county of Eddy according to the last assessments for territorial and county taxes for the year 1894, and which was the last of the kind previous to the time when the said warrants on which the plaintiff sues were issued, was of the amount of $1,495,755, that this defendant is in fact a subdivision of the said county of Eddy and is and ever has been such; that the taxable property in the limits of this defendant is and ever has been bound to pay and is and ever has been burdened with its prorata part of any and all valid debts of the said county of Eddy; that the taxable property within the limits of the defendant constituted at the time the two warrants were issued, and the same were issued within thirty days after the work had been done for which they had been issued, almost one-half of the taxable property of the entire county of Eddy; that by reason of the fact that the county of Eddy at the time the said warrants were issued and at the time the work was done for which they were issued, was indebted more than is allowed by the laws of the United States, and the defendant by reason of the fact that it is a part of the said county of Eddy and the property within its limits was indebted and burdened more than allowed sub-divisions of counties according to the laws of the United States, the warrants and indebtedness on which the plaintiffs cause of action is based, was and is void."

The plaintiff demurred to the answer upon the grounds following: .

"First: The said plea does not state any sufficient defense to said action.

"Second: The said plea alleges that the county of Eddy has an existing indebtedness of more than four per centum limit placed thereon by the act of congress, which defense is wholly immaterial to this issue.

"Third: The defendant, being a lawful corporate body with power to contract debts, sue and be sued, can not lawfully hold its outstanding indebtedness void because of the indebtedness of the county of Eddy of which it forms a part, or of the town of Eddy which is situate in the limits of defendant."

The court having sustained the demurrer, the defendant elected to stand upon its answer, whereupon judgment was rendered for the plaintiff in the sum of $175 with interest and costs. The defendant thereupon brought the cause into this court on appeal.

Whether or not the court erred in sustaining the demurrer depends wholly upon the sufficiency of the answer. In addition to the several assignments of error based upon questions not raised in the court below, and therefore not reviewable in this court, the sustaining of the demurrer is specified as error upon the ground that it is affirmatively shown by the pleadings that the funds had become exhausted and that therefore appellant could not contract the indebtedness. Appellant's argument hereon is that the first paragraph of the answer is supported by statutes, section 4 of chapter 85 of the laws of 1889, and section 22 of chapter 25, of the laws of 1891 (the latter compiled as section 1535, C. L. 1897) and being accepted as true on demurrer constitutes a legal and valid defense to the action. But on examination of the statutes we observe that the section above referred to, if not repealed by later enactments, had no application to appellant, except possibly with reference to the amount to be raised by taxation for school purposes, and

*[Margin note: BOARD of education: issuance of warrants: statutory inhibition.]*

that appellant was from the date of the creation of the indebtedness for which the warrants were issued and up to the date of their issuance governed entirely by chapter 77 of the laws of 1891 with the exception noted.   Sec. 5161, Compiled Laws of N. M.; sec. 6, ch. 77, Laws of 1891.   We see nowhere in the statutes up to the time of the issuance of these warrants (what is known as the 'Bateman Law,' sections 285 to 306, Compiled Laws of New Mexico 1897 not having been enacted until March 12, 1897) any inhibition upon appellant from issuing warrants evidencing indebtedness lawfully incurred, although there may not have been at the time of their issuance funds in the hands of the treasurer with which to pay the same.

Paragraph one of the answer, not presenting a legal defense, we must hold that the demurrer thereto was properly sustained.

The assignments of error, upon the action of the district court in sustaining the demurrer to the second paragraph of the answer raise a very important question and the principal one relied upon below.   It is contended by appellant that because the aggregate indebtedness of the county of Eddy, the town of Eddy and the board of education of the town of Eddy already burdened the taxable property within the limits of appellant with an indebtedness in excess of four per centum of the value thereof, as ascertained by the last assessment for territorial and county taxes, the indebtedness here attempted to be created was illegal and void, as being prohibited by section four of the act of congress of July 30, 1886 (Sup. R. S., U. S., vol. 1, p. 504) known as the Federal Limitation Act, which act so far as it affects this cause we quote:

POWER to incur indebtedness for school purposes.

"Section 4:   That no political or municipal corporation, county or other subdivision in any of the territories of the United States, shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property, within such corporation, county or

subdivision, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness and all bonds or obligations in excess of such amount given by such corporation shall be void.   *   *   *"

The appellee contends that upon the admitted facts the obligations here created are not in excess of the four per centum limitation within the meaning of the act, but "that appellant is one of the subdivisions of the territory to which congress specially delegated the power to create an indebtedness of four per cent of the assessed value of the property situate within its limits.   The point made therefore requires us to construe the act to ascertain, first, whether or not where more than one "political or municipal corporation, county or other subdivision" enumerated in the federal limitation act cover in whole or in part the same territory, each such corporation may independently of the other incur an indebtedness equal to four per centum on the value of the taxable property situate within the limits so covered, to be ascertained by the last assessment for territorial and county taxes previous to the incurring of such indebtedness.   In the absence of controlling precedent, we must be guided by the familiar rule of constitutional construction, the congressional enactment bearing the same relation towards the territories as does a constitutional provision to a state, and by the construction given to analogous clauses in state constitutions.   In construing the constitutional provisions that "no county   *   *   *   or any such city shall be allowed to become indebted   *   *   * to an amount which   *   *   *   shall exceed ten per centum of the assessed valuation of the real estate of such county or city subject to taxation" the highest courts of the state of New York held that the city and county may each incur debt to the extent of ten per cent of such value though the lands of the city are charged with the debts of both the city and county.   In the case of Adams v. East River Sav. Inst., 20 N. Y. Sup. 12, the learned judge in writing the opinion in the supreme court said:   "The learned counsel for the defendant contends that it was the intent of this constitutional

provision to restrain the creation of debt, either in the city
or county, which taken together, would exceed ten per cent
of the assessed value of the real estate lying within the county
or city; or in other words, that the real estate should not bear
the burden of a greater debt both for city and county purposes
than ten per cent of its assessed value.  The rules for con-
stitutional construction have often been enunciated.  While
the whole instrument is to be considered, and the real intent
should prevail over the strict letter of the provision, still that
intent must be found in the language unless the letter would
lead to palpable injustice, contradiction or absurdity.  If the
language is unambiguous, the words plain and clear, convey-
ing a distinct idea, there is no occasion to resort to other
means of interpretation.  Effect must be given to the intent
as indicated by the language employed.  Especially should
this be so in the interpretation of a written constitution framed
deliberately and with care, and adopted by the people as
organic law.  This rule is peculiarly applicable to the case in
hand, for the case is singularly barren of external sources
from which to draw light.   *   *   *   This is the first pro-
vision of the character in any of the constitutions of this state;
so we are equally without tradition or policy in this respect.
We must therefore decide the case on the very words of
the constitution.  The language of the constitution is dis-
junctive   *   *   *   the literal and grammatical reading is
that the county shall not be allowed to incur debt beyond a
certain per cent, and that the city shall not be allowed to
incur debt beyond the same per cent.  Separate restrictions
are imposed upon each.  This is so clear to my mind as to
forbid elaboration.  It is only when we consider that the
county includes the city and that lands in the latter are
charged with the debts of both corporations, that the argument
is suggested that the constitution may have intended to pre-
scribe a single rate or limit for the aggregate of both debts.
To give force to this argument it must appear that the
natural and appropriate manner to restrain local debt would be
by a single rate for the joint debt of county and city.  We

think that the reverse of this proposition is true.    *    *    *
The difficulty in the practical working of the construction con-
tended for has been apparent to the learned counsel for the
defendant and he has not inaptly asked, 'Is it to be a race for
the diligent between the city and county, to see   which shall
first exhaust the combined debt limitation?'   To obviate the
difficulty he presents an ingenious solution of the problem.
He claims that the limitations on county and city are distinct,
but that in estimating the capacity of the county to contract
debt, only the real estate of the county lying without the city
is to be reckoned.    There are several objections to this con-
struction.    It would require us to import into the constitution
words that are not there; that is, after 'county' the qualifica-
tion, 'excluding therefrom the real estate in any such city.'
This is not admissible."    In affirming the same case, the court
of appeals of New York, said:   "As the reasons in support
of the conclusions reached have been very fully and clearly
stated by the learned judge who gave the opinion at the gen-
eral term, in which we fully concur, it is quite unnecessary
for us to enter into any lengthy discussion of the question."
Adams v. East River, etc., 32 N. E. 622.

    Perhaps the most strikingly analogous cases to be found
are those construing a constitutional provision of the state of
Illinois almost identical with the one here under consideration.
It reads:    "No county, city, township, school district or
municipal corporation shall become indebted in excess of five
per centum on the taxable property," to be ascertained in a
like manner.    The supreme court of the United States had
this Illinois constitutional provision under consideration in the
case of Buchanan v. Litchfield, 102 U. S. 278, where the basis
for the computation of the five per centum limitation was held
to be upon the whole amount of taxable property within the
corporation's limits; and  while the precise question  here
raised seems never to have been directly decided in Illinois
yet by a long line of decisions the supreme court of that state
construes the section in analogy with the construction given
the New York constitutional provision in Adams v. East River

Co., supra; Doon Township v. Cummings, 142 U. S. 366; C. & A. R'y Co. v. People, 40 N. E. Rep. 602; Lawrence v. Co. Collector, 27 N. E 197; Law v. People, 87 Ill. 385; Prince v. City of Quincy, 105 Ill. 143; Howel v. City of Peoria, 90 Ill. 197; Thatcher v. People, 93 Ill. 243; Fuller v. Heath, 89 Ill. 290; Peck v. Williamson & Co., 50 Pac. 236.

The case of the City of Guthrie v. Vienna Bank, 38 Pac. Rep. 4, cited does not support appellant's contention, but on the contrary, is in line with the cases above cited.   Indeed, we find no cases which by any process of reasoning can be said to give force to appellant's argument.   In the courts of highest resort of the states of New York, Wisconsin, South Carolina, and probably others, where we find adjudicated this precise question, arising under similar prohibitory laws, the power of each enumerated corporation to incur an independent indebtedness for its own corporate purposes not to exceed the limited rate on the assessed value of the taxable property within its limits is declared to exist; and no different inference can be fairly drawn from the reasoning of the supreme court of the United States or from any of the cases decided in the state courts above cited.   Cases supra, and State v. Common Council, 71 N. W. Rep. (Wis.) 87; Todd v. City of Lawrence, 26 S. E. Rep. (S. C.) 682.

We perceive no reason why this construction is not applicable to the federal limitation act, and must therefore answer the first question arising thereunder in the affirmative, and hold that the municipal and political corporations enumerated therein may each independently of any other and regardless of the fact that two or more may cover the same territory in whole or in part incur an indebtedness not to exceed four per centum on the value of the taxable property therein situate, as ascertained by the last assessment for territorial and county purposes.

This brings us to the final question:   Is the board of education of the town of Eddy a political or municipal corporation or other subdivision of a territory within the mean-

ing of the federal limitation act? This court

<span style="margin-left:2em">MUNICIPAL corporation .</span> at this term has decided that by section 1564, Compiled Laws of New Mexico, 1897 (Sec. 8, Ch. 77, Laws of 1891), the territorial legislature created the boards of education of the cities of this territory independent municipal corporations, for school purposes, and since that section refers in like language to boards of education of the towns of the territory, there is no escape from the conclusion that the board of education of the town of Eddy is also an independent municipal corporation. Water Supply Company v. City of Albuquerque et al., 54 Pac. 973.

Paragraph 2 of the answer, for the reasons given, being insufficient as a legal defense, we hold the demurrer thereto to have been properly sustained.

The appellee having remitted thirty-nine and thirty-five hundredths dollars of the sum for which judgment was rendered below, the cause is affirmed for $135.65, with interest and costs, and the district court of Eddy county directed to enter the judgment as here modified.

Mills, C. J., Parker and McFie, JJ., concur; Leland, J., not sitting.

SYLLABUS BY THE COURT.